IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MICHAEL WRENN KOLBERG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20CV560 |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Michael Kolberg ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff received Child Supplemental Security Income until July 1, 2017, at which point the Social Security Administration ("SSA") redetermined his disability status as an adult and terminated his benefits. (Tr. at 14.)[1] Following an unsuccessful reconsideration hearing before a State agency Disability Hearing Officer (Tr. at 17, 110-24), Plaintiff requested an

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #9].

administrative hearing de novo before an Administrative Law Judge ("ALJ") (Tr. at 125-26). On May 10, 2019, Plaintiff, along with his attorney, attended the subsequent video hearing, during which Plaintiff, his father, and an impartial vocational expert testified. (Tr. at 17.) The ALJ ultimately concluded that Plaintiff was no longer disabled within the meaning of the Act (Tr. at 27), and, on April 17, 2020, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 3-8).

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the first step regarding "substantial gainful activity" is modified for redetermination cases, and the ALJ found that Plaintiff satisfied the first step of the sequential evaluation process because Plaintiff had received supplemental security income benefits as a child in the month prior to turning 18 and was notified of his redetermination under the rules for adults. (Tr. at 18, 19.) See 20 C.F.R. 416.987(b). At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> learning disorder and attention deficit hyperactivity disorder (ADHD)[.]

---

determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

(Tr. at 19.) The ALJ found at step three that neither of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 19-22.) Accordingly, the ALJ assessed Plaintiff's RFC and determined that, as of his redetermination date, Plaintiff was able to perform work at all exertional levels, but with the following, non-exertional limitations:

> able to understand, remember, and carryout simple tasks; no fast-paced production; work in a low stress job defined as only occasional decision-making and only occasional changes in the work setting; occasional interaction with coworkers, supervisors and the public; and limited to occupations that do not require more than very basic math and writing skills equivalent to the third grade level.

(Tr. at 22.) At step four of the sequential analysis, the ALJ found that Plaintiff had no past relevant work. (Tr. at 25.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in significant numbers in the national economy. (Tr. at 26-27.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 27.)

Plaintiff now raises five challenges to the ALJ's treatment of the opinion evidence. Specifically, Plaintiff contends that the ALJ erred by:

> (1) failing to consider and articulate the weight given to the opinion of Plaintiff's employer, Timothy McArthur, a non-medical source; (2) failing to consider and articulate the weight given to the opinion of School Psychologist, Marissa Casper, M.A. P.D, an examining acceptable medical source; (3) failing to properly evaluate the testimony of Mr. Kolberg's father, Allen Kolberg, a non-medical source; (4) failing to properly evaluate the medical opinion of Dr. Appollo, an examining acceptable medical source; and, (5) by affording great weight to the medical opinion of Dr. Mullen, the State agency Psychological Consultant, but not incorporating Dr. Mullen's opined functional assessment limitations in the [RFC] and hypotheticals posed to the Vocational Expert.

6

(Pl.'s Br. [Doc. #13] at 11.)  After careful consideration of the entire record, the Court finds that remand is required.

A. Timothy McArthur

Plaintiff first argues that the ALJ reversibly erred by failing to mention, consider, or weigh the questionnaire completed by Plaintiff's employer, Timothy McArthur.  Under the regulations applicable in this case, with respect to opinions from non-medical sources such as parents, neighbors, and employers, "[t]he adjudicator generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  20 C.F.R. § 416.927(f)(2) (emphasis added).  With respect to this requirement, Social Security Ruling 06-03p previously explained that:

> Although the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from "acceptable medical sources," these same factors can be applied to opinion evidence from "other sources." . . . .
> . . . .
> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

<u>Titles II & XVI: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Med. Sources" in Disability Claims; Considering Decisions on Disability by Other</u>

Case 1:20-cv-00560-LCB-JEP   Document 16   Filed 08/30/21   Page 7 of 16

Governmental & Nongovernmental Agencies, SSR 06-03p, 2006 WL 2329939, at *4, *6 (Aug. 9, 2006).[4]

In the present case, Plaintiff was working part-time with family friend Timothy McArthur at Moe's Southwest Grill, cleaning tables and washing dishes. (Tr. at 39, 45-46, 55, 58, 61.) Mr. McArthur completed a Work Activity Questionnaire (Tr. at 293-96) reflecting that he served as General Manager of Moe's Southwest Grill, where Plaintiff had worked 20 hours per week since August 2018. (Tr. at 294, 296.) He further indicated that Plaintiff was able to complete all his job duties, but that Plaintiff was not able to complete his work in the same amount of time as employees in similar positions, that Plaintiff was held to "lower production standards" than other employees, and that Plaintiff received "extra help/supervision." (Tr. at 294.) Mr. McArthur estimated that Plaintiff's productivity level was about 60 percent of other employees in similar positions. (Tr. at 295.) Mr. McArthur further explained that Plaintiff was hired based on Mr. McArthur's personal relationship with Plaintiff's family as a "long time family friend." (Tr. at 295.) At the hearing, Plaintiff's father testified that he had approached Mr. McArthur regarding Plaintiff's difficulties and Mr. McArthur agreed to "help him out." (Tr. at 55.)

---

[4] The Court notes that on March 27, 2017, SSR 06-3p was rescinded in connection with the new regulations applicable to claims filed on or after March 27, 2017. See Rescission of Social Security Rulings, 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 at 5854-55, 2017 WL 168819 ("Under SSR 06-03p, we consider opinions from medical sources who are not AMSs and from nonmedical sources using the same factors we use to evaluate medical opinions from AMSs. We state that an adjudicator generally should explain the weight given to opinions from these sources, or otherwise ensure that the discussion of the evidence in the determination or decision allows an individual or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. In addition, when an adjudicator determines that an opinion from one of these sources is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the determination or decision if the determination is less than fully favorable under our current rules. In these final rules, we have included these policies from SSR 06-03p into final 404.1527 and 416.927 for claims filed before March 27, 2017.").

At the hearing, counsel for Plaintiff identified the importance of Mr. McArthur's opinion, specifically citing it as one of the most important pieces of evidence in the case. Counsel explained:

> . . . [E]ven then at below SGA he's struggling and this is a family friend who's employing him as a general manager. . . [I]f a listing is not found based on 12.05 mild intellectual disability we believe that the RFC should also preclude work on a full-time competitive basis. And again, the strongest evidence is the fact that he's currently doing unskilled work and he's struggling in doing it according to his manager.

(Tr. at 39-40.)

However, the ALJ did not mention Mr. McArthur's questionnaire or weigh it in his decision. Notably, the ALJ repeatedly stated that Plaintiff was employed at a fast-paced restaurant job with "some accommodations." (Tr. at 24, 25.) However, the ALJ never described those accommodations. Moreover, the ALJ relied on Plaintiff's ability to work at the restaurant to (1) reject Plaintiff's allegations of complete disability (Tr. at 24), and (2) give little weight to Dr. Apollo's opinion reflecting more significant limitations (Tr. at 25). Nevertheless, despite clearly finding that Plaintiff's restaurant work was material to the decision, the ALJ never described the accommodations or addressed Mr. McArthur's evaluation in any way. Mr. McArthur opined that Plaintiff could only perform at 60 percent productivity in that position washing dishes and cleaning tables. As noted by Plaintiff in the briefing, the VE testified that an individual functioning at 60 percent of productivity of a similarly situated employee would preclude all work. (Tr. at 67.) Given the ALJ's failure to weigh or explain his consideration of Mr. McArthur's evaluation in any way, it is not clear if the ALJ even considered Mr. McArthur's opinion, and there is no way for the Court to follow

9

the ALJ's reasoning.[5] Therefore, remand is required so that the ALJ can consider and analyze Mr. McArthur's opinion in the first instance.

   B.  Marissa Casper

Plaintiff also contends that the ALJ failed to properly consider the opinions proffered by Plaintiff's former school psychologist, Marissa Casper. As with Mr. McArthur's opinions, the ALJ failed to expressly mention or weigh Ms. Casper's opinion evidence in the administrative decision. Ms. Casper clearly qualifies as an examining, "acceptable medical source." Such sources are entitled to evaluation under the criteria set out in 20 C.F.R. 416.927(c). Here, however, the ALJ provided no analysis whatsoever and only referenced the test results obtained by Ms. Casper when summarizing the medical evidence. (Tr. at 23.)

Defendant now argues that the ALJ's omission amounts to, at most, harmless error, because further consideration of Ms. Casper's opinion would not alter the ALJ's RFC determination. (Def.'s Br. [Doc. #15] at 18-19) (citing Parker v. Berryhill, 733 F. App'x 684, 685 (4th Cir. 2018); Tanner v. Comm'r of Soc. Sec., 602 F. App'x 95, 100 (4th Cir. 2015)). However, as Plaintiff correctly points out, Ms. Casper's recommendations include repeating, restating, and clarifying instructions as needed, obtaining Plaintiff's attention before providing

---

[5] Plaintiff likewise notes that under Social Security guidance:
   Regardless of whether the work was SGA, information about how well a young adult performed in these placements can help us assess how the young adult functions. For example, a young adult who was unable to sustain OJT placements may have limitations in the ability to understand and remember instructions or to persist at work-related tasks. In contrast, a young adult who performed OJT placements successfully may have a good ability to respond appropriately to supervision. In addition, information about the degree to which a young adult needs special supports in order to work (such as in supported or transitional employment programs) may also help us assess the young adult's functioning.
SSR 11-2p: Titles II and XVI: Documenting and evaluating Disability in Young Adults, SSR 11-2p, 2011 WL 4055665, at *7 (Sept. 12, 2011). Because the ALJ did not address the accommodations or Mr. McArthur's opinion, the ALJ failed to explain his analysis of "the degree to which [Plaintiff] needs special supports in order to work" but still relied on Plaintiff's work in finding him no longer disabled.

10

instructions, pairing auditory information with visual cues when possible, and providing extended time for assignments. (Tr. at 485.) None of these restrictions find analogs in the RFC. (See Tr. at 22.) Defendant also contends that Ms. Casper's recommendations are inapposite, as they pertain to Plaintiff's school performance rather than his job performance. (Def.'s Br. at 19.) However, the abilities to understand, follow, and carry out tasks are directly relevant to Plaintiff's ability to perform basic work activities.[6] Moreover, the ALJ did not provide the rationale suggested by Defendant as a basis for discounting Ms. Casper's opined limitations. As noted in Anderson v. Colvin, this Court's

> [r]eview of the ALJ's ruling is limited . . . by the so-called 'Chenery Doctrine,' which prohibits courts from considering post hoc rationalizations in defense of administrative agency decisions. . . . Under the doctrine, a reviewing court "must judge the propriety of [agency] action solely by the grounds invoked by the agency. . . . If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."

Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726, at *1 (M.D.N.C. Mar. 25, 2014) (quoting Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947)). Accordingly, remand is appropriate, in order for the ALJ to make findings regarding Ms. Casper's evaluation in the first instance.

---

[6] As Plaintiff notes, SSR 11-2p provides that:
    . . . [W]e may have evidence about a young adult's functioning from school programs, including IEPs. This evidence may indicate how well a young adult can use his or her physical or mental abilities to perform work activities. The following examples of school-reported difficulties might indicate difficulty with work activities:
•Difficulty in understanding, remembering, and carrying out simple instructions and work procedures during a school-sponsored work experience;
•Difficulty communicating spontaneously and appropriately in the classroom;
•Difficulty with maintaining attention for extended periods in a classroom;
•Difficulty relating to authority figures and responding appropriately to correction or criticism during school or a work-study experience;
•Difficulty using motor skills to move from one classroom to another.

11

C. Other Opinion Evidence

The ALJ's treatment of the opinion evidence provided by Plaintiff's father also raises concerns. In February 2017, Mr. Kolberg completed a third-party function report in which he indicated that Plaintiff's impairments affect his memory, concentration, and understanding, as well as his abilities to complete tasks, follow instructions, and get along with others. (Tr. at 202.) In particular, Mr. Kolberg indicated that Plaintiff could not follow written or spoken instructions, did not finish what he started, and could only pay attention for a few minutes at a time. (Tr. at 202.) He also noted that Plaintiff could not handle stress or changes in routine well and gets upset under pressure. (Tr. at 203.) At Plaintiff's hearing, Mr. Kolberg testified that Plaintiff required help filling out job applications and required constant supervision and reminders when looking after his infant daughter, particularly with regard to feeding and diaper changes. (Tr. at 55, 56-57.) With regard to Plaintiff helping his grandmother, who has stage four lung cancer, Mr. Kolberg testified that Plaintiff "tries to just make sure that she's comfortable, listening to whatever she says, takes out the trash, try [sic] to do some lifting for her, whatever she needs." (Tr. at 58.) Mr. Kolberg also testifies that there was no way Plaintiff would be able to live on his own. (Tr. at 60.)

The ALJ expressly "considered the testimony and third party report from [Plaintiff's] father, Allen Kolberg, [but] afford[ed] them little weight." (Tr. at 25.) In doing so, the ALJ explained that

> Mr. Kolberg's testimony is inconsistent with [Plaintiff's] activities of daily living, which include work activity in a fast pace [sic] restaurant, childcare, and caring for his grandmother who is elderly and infirm. The testimony and report are also inconsistent with the mental status examination conducted by the consultative examiner.

12

(Tr. at 25.)

The ALJ gave similar reasons for rejecting the medical opinion of Consultative Examiner Dr. Appollo. As summarized by the ALJ,

> Dr. Appollo opined that [Plaintiff] would have difficulty in the ability to understand, retain[,] and follow instructions. Working memory skills fall in the extremely low range and [Plaintiff] would have difficulty in the ability to sustain attention over a period to perform tasks. [Plaintiff] can get along with others. [He has] limited cognitive skills and [a limited] ability to tolerate stress and pressure associated with day-to-day work activity.

(Tr. at 25.) The ALJ ultimately accorded "little weight to these opinions." In doing so, he asserted that they were

> inconsistent with [Plaintiff's] activities of daily living, which include the ability to perform work activity in a fast-paced setting with accommodations; the ability to care for his daughter, including changing her diapers, feeding her, and keeping her safe; and helping to care for his grandmother. The opinions are also inconsistent with the lack of medical treatment for ADHD; the treatment notes from [Plaintiff's] pediatrician not[ed] that [Plaintiff's] ADHD symptoms improved with medication. Lastly, the opinions are unsupported by . . . Dr. Appollo's own mental status examination, which indicated [Plaintiff] was pleasant and interactive. His mood and affect were stable; his speech was clear; [Plaintiff] could follow simple directions; and he could avoid simple physical danger.

(Tr. at 25.)

Plaintiff now argues that the ALJ mischaracterized his activities of daily living when using them as a basis for discounting Mr. Kolberg's testimony and Dr. Appollo's opinions. The Court agrees. The ALJ used testimony that Plaintiff could perform part-time, non-competitive work under the close supervision of a family friend, could occasionally care for his child under the constant supervision of his father and his father's girlfriend, and could perform occasional, simple household tasks to assist his grandmother as evidence that Plaintiff's mental limitations were not as limiting as alleged by Plaintiff and his father.

13

However, as the Fourth Circuit explained in Woods v. Berryhill, "[a]n ALJ may not consider the type of activities a claimant can perform without also considering the extent to which she can perform them." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018); see also Lewis v. Berryhill, 858 F.3d 858, 868, n.3 (4th Cir. 2017) ("The ALJ points to Lewis' ability to perform incremental activities interrupted by periods of rest, such as 'driving short distances of up to 30 miles, shop for groceries with the assistance of her mother or roommate, handle her finances, and watch television.' The ALJ's conclusion that Lewis' activities demonstrate she is capable of work is unsupported by the record.") (citation omitted); Brown v. Comm'r, 873 F.3d 251, 263 (4th Cir. 2017); Fletcher v. Colvin, No. 1:14CV380, 2015 WL 4506699 at *5-*8 (M.D.N.C. Jul. 23, 2015). In the present case, the ALJ cited Plaintiff's "work activity in a fast pace [sic] restaurant, childcare, and caring for his grandmother who is elderly and infirm" with no reference to the highly modified nature of these activities. Although the ALJ mentions elsewhere in his decision that Plaintiff's performs his job "with accommodations" (Tr. at 25), at no point does the ALJ include the extent of these accommodations or the limited extent of Plaintiff's caregiving activities. Notably, in his three-page RFC analysis, the ALJ stresses Plaintiff's abilities to work and care for his daughter and grandmother on four separate occasions, each time without reference to the supervision and assistance these activities require. (Tr. at 23-25.) In short, the ALJ's unqualified listing of Plaintiff's activities fails to provide a basis for discounting Mr. Kolberg's and Dr. Appollo's opinions.

The ALJ also discounts Mr. Kolberg's opinions as inconsistent with the examination conducted by Dr. Appollo. (Tr. at 25.) As noted in the administrative decision, Dr. Appollo concluded, after extensive testing, that Plaintiff's

> cognitive skills fell in the borderline range of intelligence and were consistent with the history of learning problems in school. Achievement scores were all well below average. Achievement levels were consistent with the present level of cognition. It was opined that, based on test results, [Plaintiff] would have difficulty in the ability to understand, retain and follow instructions. Working memory skills fall in the extremely low range and [Plaintiff] would have difficulty in the ability to sustain attention over a period to perform simple tasks. [Plaintiff] can get along with others. [Plaintiff] had limited cognitive skills and would find it frustrating and the ability to tolerate stress and pressure associated with day-to-day activity. It was also noted that his medication for ADHD had been helpful and [Plaintiff] needs to continue this to deal with symptoms that affect his ability to follow through with tasks.

(Tr. at 23 (citing Tr. at 341-53).) The ALJ never specifies what, if any, inconsistencies exist between Dr. Appollo's findings and Mr. Kolberg's statements, and none are apparent from the record. In fact, it appears that both Dr. Appollo's report and Mr. Kolberg's statements reflect very poor memory and concentration and very limited abilities to handle stress and understand, retain, and follow instructions.

Plaintiff raises additional issues regarding the ALJ's treatment of these and other opinions. However, the Court need not consider these additional issues at this time, given the concerns already discussed and the need for a remand to allow the ALJ to consider and evaluate relevant evidence in the first instance and provide sufficient explanation to allow for judicial review.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for further consideration of Plaintiff's claim in accordance with the above recommendation. Defendant's Motion for Judgment on the Pleadings [Doc. #14] should be DENIED, and Plaintiff's Motion for Judgment Reversing the Commissioner [Doc.

#12] should be GRANTED to the extent set out herein. However, to the extent Plaintiff seeks an immediate award of benefits, his Motion is DENIED.

This, the 30th day of August, 2021.

/s/ Joi Elizabeth Peake
United States Magistrate Judge

16

Case 1:20-cv-00560-LCB-JEP   Document 16   Filed 08/30/21   Page 16 of 16